UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARCUS S. GERLACH, et al.,

    Plaintiffs,

v.

CITY OF BAINBRIDGE ISLAND, et al.,

    Defendants.

CASE NO. C11-5854BHS

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING TO STATE COURT

  This matter comes before the Court on Defendants City of Bainbridge Island ("the City") and Joshua Machen's ("Machen") (collectively, "Defendants") motion for summary judgment. Dkt. 12. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part the motion and remands this action for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL HISTORY

  This case arises out of Plaintiffs Marcus S. Gerlach ("Mr. Gerlach") and Suzanne L. Gerlach's ("Mrs. Gerlach) (collectively, "the Gerlachs") application for and obtainment of a permit from the City to install a mooring buoy in front of their home.

  The Gerlachs purchased the waterfront home at issue in September 2004. Dkt. 16-4 at 1. According to the Gerlachs, "[a]fter moving into the residence on the property, a

1  refurbished pre-1996 mooring buoy was returned to the private tidelands." *Id*. at 2.  In

2  2005, the City requested that the Gerlachs remove the mooring buoy and file an

3  appropriate permit application.  *Id*.; Dkt. 15 at 2.  The Gerlachs then removed the buoy.

4  *Id*.

5        On June 3, 2005, the Gerlachs filed an application to "[r]eplace mooring buoy"

6  and paid the $540.00 filing fee.  Dkt. 16-5 at 2.  While the permit was pending, the

7  Gerlachs visited the City's planning department and spoke with Machen about their

8  application.  *Id*. at 4.  According to Mr. Gerlach, "[d]uring that conversation, Machen

9  informed me that he owned a window washing business and hinted that he did work for

10  my neighbor, Maurine Rodal . . . [whose] residence was permitted by [the City] in 2001,

11  within close proximity to the shoreline [and] Machen was the [City's] permit reviewer

12  regarding the Rodal residence."  *Id*.  After the Rodal residence was completed, Machen

13  was hired to perform window washing.  *Id*.  Mr. Gerlach alleges that "[i]t was clear that

14  Machen was soliciting business to hire him for a window washing job at my residence

15  and I was uncomfortable with this intimation as a permit was pending with [the City].  I

16  declined to hire Machen to perform window washing at my residence [and] thereafter

17  sought to communicate in writing, to avoid any more solicitations."  *Id*.

18        While the Gerlach's permit was pending, Mrs. Gerlach was in the side yard of her

19  property painting the house with Mr. Gerlach when she saw Machen arrive in his truck at

20  the Rodal residence.  Dkt. 16-4 at 3.  According to Mrs. Gerlach, "Machen's employee

21  got out of the truck and spoke directly to me [and] solicited to clean the windows at our

22

1  residence. Machen knew the mooring buoy permit was pending approval when his

2  employee solicited business from me. I refused the solicitation." *Id*.

3  In December 2006, according to Mr. Gerlach, "After I refused to hire Machen, I

4  was told by [the City] that I would need to pay additional fees (SEPA fees, which were

5  previously not required) to permit my mooring buoy as a new buoy. I contested the

6  newly instituted fees and informed [the City] that the mooring buoy should not be

7  considered new, but rather pre-existing and [SEPA] fees were improper." *Id*. at 5. On

8  December 6, 2006, Mr. Gerlach sent a letter to the City stating that "unless the City is

9  now willing to issue the permit upon tender of all remaining balances as previously

10 discussed, I believe it may be prudent to cancel this action and receive a refund of the

11 $540.00 originally paid to the City as a way to close." *Id*. at 45. The letter also stated

12 that "I may elect to subsequently submit a new application for a mooring buoy in the

13 future, at which time we may again revisit the City's concerns regarding mooring buoys

14 on private tidelands." *Id*.

15 On April 21, 2010, the City enacted a resolution allowing for the programmatic

16 permit "to create a process by which recreational mooring buoys meeting certain criteria

17 may be reviewed and permitted through an expedited process . . . ." Dkt. 16-5 at 51-53.

18 On September 30, 2010, the Gerlachs filed an application for non-conforming

19 mooring buoy application. Dkt. 16-5 at 55-63. On October 4, 2010, the City sent a letter

20 to Mr. Gerlach, signed by Brenda Bauer, Interim City Manager, stating that "[b]ased on

21 the information on file . . . the nonconforming buoy application is not the appropriate

22 permit to establish a buoy on your tidelands." The letter states that Mr. Gerlach "may

choose to apply for a buoy under the City's Programmatic Buoy Permit process" but that "staff has informed me that the depth and location of the buoy could be an issue under" that process and "[o]nly buoys that meet all of the provisions of the programmatic permit process may be approved." Dkt. 16-5 at 66. According to the Gerlachs, this letter missated the requirements for the nonconforming mooring buoy application. Dkt. 16-5 at 9.

On October 22, 2010, the Gerlachs submitted an application for a mooring buoy under the City's programmatic buoy permit process. Dkt. 16-5 at 9. On February 14, 2011, the City issued a notice of administrative decision denying the Gerlachs' permit and stating the following reasons for the denial:

> 1. The proposed location (primary or alternative) of the proposed buoy is in water depth less than -9 MLLW, and therefore does not comply with the Shoreline Programmatic Buoy Permit requirements.
> 2. The proposed location is near the center of the channel of Eagle Harbor, which could be a substantial obstruction to navigation.
> 3. The proposed location is water ward of the Eagle Harbor Construction limit line, which is a violation of the Shoreline Programmatic Buoy Permit condition #4.

Dkt. 16-5 at 93-94.

On February 28, 2011, the Gerlachs filed a timely notice of intent to appeal. *Id*. at 102-13. In June 2011, the Gerlachs agreed to a contingent settlement with the City, "provided the depth, navigation and location were not disqualifiers to the permit." *Id*. at 14. On June 30, 2011, the Gerlachs filed a permit application, similar to the one filed in 2005, and on August 4, 2011, the City issued a notice of administrative decision

approving the permit. Dkts. 14 at 2 & 16-5 at 14. The Gerlachs and the City signed a stipulation to dismiss the appeal, which was entered on August 25, 2011. Dkt. 13 at 8.

On September 16, 2011, the Gerlachs filed an action alleging claims against the City and Machen for violations of RCW 64.40, their constitutional rights, as well as tortious interference with property rights, in Kitsap County Superior Court. Dkt. 1 at 5-15. On October 17, 2011, the City removed the action to this Court. Dkt. 1 at 1-3.

On April 12, 2011, the City filed a motion for summary judgment alleging that certain claims alleged by the Gerlachs are barred because they failed to exhaust their administrative remedies, that Machen is entitled to qualified immunity, and that the Gerlachs failed to articulate claims for substantive due process or tortious interference. Dkt. 12. On April 30, 2012, the Gerlachs responded (Dkt. 16) and on May 4, 2012, Defendants replied (Dkt. 18).

## II. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     The Gerlachs' Motion for Continuance**

In their response to the motion for summary judgment, the Gerlachs seek a continuance of the motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Dkt. 16 at 8-10.

1       Under Rule 56(d), if the nonmoving party establishes that it is unable to properly
2  defend against a motion for summary judgment, the Court may: (1) deny or continue the
3  motion, (2) allow time to take discovery or obtain affidavits or declarations, or (3) issue
4  any other appropriate order.  Fed. R. Civ. P. 56(d).  The party seeking such a continuance
5  must make (a) a timely application which (b) specifically identifies (c) relevant
6  information, (d) where there is some basis for believing that the information sought
7  actually exists.  *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox*
8  *Co.*, 353 F.3d 1125, 1129-1130 (9th Cir. 2004).  The Court may deny the request unless
9  the party opposing summary judgment articulates how additional discovery may preclude
10 summary judgment and demonstrates diligence in pursuing discovery thus far.  *Qualls v.*
11 *Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).  The burden is on the
12 nonmoving party to establish that proceeding with additional discovery would produce
13 evidence sufficient to defeat summary judgment and that the evidence it seeks is in
14 existence.  *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

15      Here, the Court concludes that the Gerlachs' motion for continuance should be
16 denied because they have failed to meet their burden to show that the evidence sought
17 would be sufficient to defeat summary judgment.  *Chance*, 242 F.3d at 1161 n.6.
18 Specifically, the Gerlachs' motion seeks to discover evidence related to "illegal conduct
19 by Mr. Machen in abuse of his authority, improper acts by [the City], and a pattern of
20 preferential treatment to Bainbridge Island Residents who have purchased services from
21 Mr. Machen's window washing business."  Dkt. 16 at 9.  Because, as discussed below,
22 the Court has concluded that the Gerlachs' RCW 64.40 claim fails on procedural grounds

and the evidence sought would not affect the Court's conclusion regarding Machen's or the City's actions in this specific case, the Gerlachs have failed to show that the evidence sought would preclude summary judgment. Accordingly, the Gerlachs' motion for continuance is denied.

**C.     Defendants' Motion for Summary Judgment**

Defendants seek summary judgment on the Gerlachs' claims based on their failure to exhaust their administrative remedies. Dkt. 12. In addition, Defendants maintain that Machen is entitled to qualified immunity and that the Gerlachs have failed to articulate claims for substantive due process and tortious interference. *Id*. The Defendants also seek an award of reasonable attorney's fees under RCW 64.40.020. *Id*. at 19. In their response to the motion, the Gerlachs seek a continuance of the motion for summary judgment pursuant to Rule 56(d) as discussed above. Dkt. 16. The Gerlachs also argue that they have exhausted their administrative remedies, that Machen is not entitled to qualified immunity, and that they have properly brought claims for substantive due process and tortious interference with property rights. *Id*. Also in their response, the Gerlachs include a request for sanctions against Defendants under Rule 11 of the Federal Rules of Civil Procedure and Local General Rule 3. *Id*. at 16-18.

**1.     RCW 64.40**

Defendants argue that they are entitled to summary judgment on the Gerlachs' RCW 64.40 claim because they failed to exhaust their administrative remedies. Dkt. 12 at 10-13.

The parties do not dispute the relevant issues in the procedural history. The Gerlachs' permit application was denied by the City and the Gerlachs appealed the decision to the Hearing Examiner. The Gerlachs agreed to a contingent settlement with the City prior to the scheduled proceeding before the Hearing Examiner. Dkts. 14 at 2 & 16-5 at 14. The settlement agreement, signed June 29, 2011, did not provide for damages or admission of fault by either party. Dkt. 13 at 6. On August 4, 2011, a Notice of Administrative Decision was issued for the buoy permit. Dkts. 14 at 2 & 16-5 at 14. On August 25, 2011, the Hearing Examiner entered a stipulated order of dismissal with prejudice signed by both parties. Dkt. 13 at 8; *see* Dkt. 16-5 at 14.

Washington's Land Use Protection Act, RCW 36.70C ("LUPA"), provides a statutory standard for judicial review of land use decisions. LUPA defines "land use decisions" as "a *final* determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals" on land use decisions. RCW 36.70C.020. RCW 64.40.020 provides for damages resulting from governmental actions including an agency's decision on a permit application. Specifically, the statute reads:

> Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the *final decision* of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

1  RCW 64.40.020 (emphasis added).  In addition, RCW 64.40.030 states that "[a]ny action
2  to assert claims under the provisions of this chapter shall be commenced only within
3  thirty days after all administrative remedies have been exhausted."

4  Here, the Gerlachs applied for and were denied a buoy permit from the City and
5  appealed the decision to the Hearing Examiner.  However, the Hearing Examiner never
6  made a final decision because the Gerlachs settled with the City before the proceedings
7  with the Hearing Examiner were held.  The Gerlachs and the City signed a stipulation of
8  dismissal stating they had settled the matter and an order of dismissal with prejudice was
9  entered by the Hearing Examiner.  Dkt. 13 at 8.  Because the Gerlachs settled with the
10 City, a final decision was never reached for purposes of filing a claim under RCW
11 64.40.020 and their administrative remedies were not exhausted.  The Gerlachs argue that
12 they are entitled to proceed with their RCW 64.40.20 claim, regardless of the fact that the
13 City eventually issued the permit, based on the City's unlawful delay in the permit
14 process.  While the Gerlachs cite Washington cases and a federal case from this district in
15 support of their argument, the cases involve plaintiffs who had yet to reach the end of the
16 administrative process, and therefore the appellate court remanded the action (*see Callfas*
17 *v. Dept. of Constr. & Land Use*, 129 Wn. App. 576 (2005)), and plaintiffs who exhausted
18 the administrative process and were granted the relief they sought through such process
19 (*see Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 961-62 (1994)); *MIR*
20 *Enterprises v. City of Brier*, No. C09-1051RSL, 2010 U.S. Dist. LEXIS 120713 (W.D.
21 Wash. Nov. 15, 2010)).  Here, the Gerlachs chose to settle with the City for the relief they
22 sought, i.e., the granting of the permit application, chose to stipulate to a dismissal of

their appeal of the City's initial decision prior to the proceedings before the Hearing Examiner (Dkt. 13 at 8), and therefore, failed to exhaust their administrative remedies under RCW 64.40.030.  Accordingly, Defendants are entitled to summary judgment on the Gerlachs' RCW 64.40.020 claim.

In addition, because Defendants are the prevailing party under RCW 64.40.20(2), they are entitled to reasonable attorney's fees incurred in defending the Gerlachs' RCW 64.40 claim.  Accordingly, Defendants are to submit proper documentation of attorney's fees incurred in defending this claim.

**2.     Substantive Due Process**

Defendants argue that the Gerlachs' claim for substantive due process should be dismissed against Machen because he is entitled to qualified immunity, and against the City because the Gerlachs have failed to show a constitutional violation on the part of the City and additionally failed to oppose Defendants' motion on this claim against the City and have not shown such a claim is proper under *Monnell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The Gerlachs argue that Defendants' arbitrary actions and unreasonable delay in issuing the permit violated their substantive due process rights in violation of 42 U.S.C. § 1983.

"A prima facie case under [§] 1983 requires the plaintiff to show that a person, acting under color of state law, deprived the plaintiff of a federal constitutional or state-created property right without due process of law." *Mission Springs, Inc.*, 134 Wn. 2d at 962 (footnote omitted).  "Property interests are not created by the constitution but are reasonable expectations of entitlement derived from independent sources such as state

1  law." *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "The right to use
2  and enjoy land is a property right." *Id.*  "Moreover, procedural rights respecting permit
3  issuance create property rights when they impose significant substantive restrictions on
4  decision making." *Id.* at 963; *see Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir.1980)
5  (property interest is created where discretion to deny the permit or license is limited).

6  "When executive action like a discrete permitting decision is at issue, only
7  'egregious official conduct can be said to be arbitrary in the constitutional sense': it must
8  amount to an 'abuse of power' lacking any 'reasonable justification in the service of a
9  legitimate governmental objective.'" *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir.
10 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)); *see City of
11 Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003) (rejecting
12 substantive due process claim because city engineer's refusal to issue building permits "in
13 no sense constituted egregious or arbitrary government conduct").  "Official decisions
14 that rest on an erroneous legal interpretation are not necessarily constitutionally
15 arbitrary." *Shanks*, 540 F.3d at 1088; *see Collins v. City of Harker Heights*, 503 U.S.
16 115, 128-30 (1992).  Thus, to succeed on a substantive due process claim, plaintiffs
17 "must show that the City's delays in processing its application lacked a rational
18 relationship to a governmental interest." *North Pacifica LLC v. City of Pacifica*, 526
19 F.3d 478, 485 (9th Cir. 2008).  When determining whether the constitutional line has
20 been crossed, the fact finder should consider "the need for the governmental action in
21 question, the relationship between the need and the action, the extent of harm inflicted,
22

and whether the action was taken in good faith or for the purpose of causing harm." *Plumeau v. School Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

### a. Machen

Defendants maintain that Machen is entitled to qualified immunity because the Gerlachs have failed to show a constitutional violation and, even assuming such a violation has been shown, it was not clearly established in that Machen would not have known he was violating the Gerlachs' constitutional rights.

Government officials who are sued in their individual capacities have qualified immunity from suit absent evidence of incompetence or knowing violation of the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This rule is intended to "balance two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and the liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity is not merely a defense to liability; it is an entitlement to immunity from suit in the first place. *See Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

When analyzing a motion containing a qualified immunity defense, the court considers (1) whether a violation of a constitutional right has been shown, and (2) whether a reasonable official would have recognized that his actions violated a clearly established law. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001*), overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Under *Pearson*, trial court judges have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). A plaintiff must be able to satisfy both prongs of the analysis, and absent a showing of a constitutional violation, there is no need to consider the second prong of the qualified immunity analysis. *Id.*

The Court concludes that Machen is entitled to qualified immunity because the Gerlachs have failed to show a constitutional violation. Even if the Court accepts as true the facts and inferences[1] alleged by the Gerlachs regarding Machen's use of his power and position with the City to solicit customers for his personal business, the Gerlachs have failed to show that Machen's actions with respect to their permit application lack "any 'reasonable justification in the service of a legitimate governmental objective.'" *Shanks*, 540 F.3d at 1088. Rather, assuming the allegations are true, the Gerlachs have shown that Machen abused his power, but have failed to show that the justifications given for denying the permit were unreasonable or that there was a lack of a legitimate governmental objective. In addition, the Gerlachs have failed to show that Machen's

---

[1] The Court notes that the inference made by the Gerlachs that Machen was soliciting their business and basing his decision regarding their permit on their patronage is essentially a conclusory inference unsupported by the facts. *See* Dkts. 16-4 & 16-5.

alleged abuse of power was the cause of the denial where the decision to deny the permit was made by a group of officials, rather than in Machen's sole discretion. As stated in Machen's declaration and unrefuted by the Gerlachs, Katherine Cook ("Cook"), the Planning Department Director, was Machen's supervisor and ultimately had the power to make the decision regarding the Gerlachs' permit. Dkts. 15 at 3 & 19 at 3. In addition, as Machen states in his declaration, the staff, including at least two others in addition to Machen and Cook, assisted in preparing a four-page report (with eleven attachments) analyzing the Gerlachs' application and stating the four reasons for denial. *See* Dkt. 15 at 3-4, 26-29. There are no allegations that the other staff members were corruptly motivated. Accordingly, the Court concludes that Machen is entitled to qualified immunity.

To address the second prong, although unnecessary, the Court notes that without question, a reasonable official would know that using one's position of employment to solicit a bribe, e.g. patronage of the official's personal business, from citizens in exchange for the granting of a permit would result in the violation of the law. However, here, as discussed above, the Gerlachs cannot show that Machen's behavior, however inappropriate, was the cause of the deprivation of their permit when Defendants have shown that there were multiple reasonable grounds for denial and the decision was made among a group of officials.

    **b.**  **City**

Municipal liability for section 1983 purposes attaches when the municipality acts through official policy in the denial of a constitutional right. *Monell*, 436 U.S. 658

1 (1978). An act undertaken by a municipal legislative body is an act of the municipality.

2 *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

3 Here, because the Gerlachs have failed to show a violation of their constitutional
4 rights, municipal liability cannot attach and their claim for substantive due process
5 against the City is dismissed.

6 **3.  Tortious Interference**

7 Because the Court has dismissed the federal claims in this case, the Court declines
8 to exercise supplemental jurisdiction over the Gerlachs' tortious interference claim and
9 remands this action to the court in which it was filed. *See* 28 U.S.C. § 1367(c)(3).

10 **4.  The Gerlachs' Motion for Sanctions**

11 Because the Court has concluded that Defendants' motion had merit with respect
12 to the RCW 64.40 claim and violation of substantive due process, the Court concludes
13 that the Gerlachs' motion for sanctions under Rule 11 of the Federal Rules of Civil
14 Procedure and Local Rule GR 3 should be denied.

15 **III. ORDER**

16 Therefore, it is hereby **ORDERED** that Defendants' motion for summary
17 judgment (Dkt. 12) is **GRANTED in part** as discussed above and this action is
18 **REMANDED** to the court in which it was filed.

19 Dated this 7th day of August, 2012.

BENJAMIN H. SETTLE
United States District Judge